

1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                                  **DISTRICT OF NEVADA**

8    GC AIR, LLC,                          )

9                    Plaintiff,            )

10           v.                            )        3:11-cv-647-RCJ-WGC

11                                         )        **ORDER**
     RANCHARRAH MANAGEMENT, LLC, et al.,   )
12                                         )
                     Defendants.           )
13   _____ )

14

15           Currently before the Court is a motion for summary judgment (#29) filed by Plaintiff GC

16   Air, LLC ("GC Air") against Defendants Rancharrah Management LLC ("Rancharrah"), The

17   Harrah Family Trust, and John A. Harrah (collectively "Defendants").  For the following

18   reasons, the Court grants the motion for summary judgment as to liability but denies it for the

     present time as to damages.
19

20                                    **BACKGROUND**

21           On or about December 30, 2005, GC Air, as lessor, and Rancharrah, as lessee,

22   executed an aircraft lease agreement (the "Lease") under which GC Air agreed to lease to

23   Rancharrah an Israel Aircraft Industries Model 1125 Westwind Astra Aircraft (the "Aircraft").

     (Lease (#30) Ex. 1).  To induce GC Air to enter into the Lease with Rancharrah, John A.
24
     Harrah—in his capacity as Trustee of the Harrah Family Trust (the "Trust") and in his individual
25
     capacity—executed two guarantees (the "Guarantees"), in which both the Trust and John A.
26
     Harrah individually guaranteed Rancharrah's performance under the Lease.  (Guaranty (#30)
27
     Ex. 2; Individual Guaranty (#30) Ex. 3).
28
             The Lease and Guarantees are governed by Connecticut law, which is the location of

the principal office of General Electric Credit Corporation of Tennessee—the entity ultimately in control of GC Air.  (Lease (#30) Ex. 1 at 17; Compl. (#1) at 1-2).  The Lease defines an "Event of Default" as the failure of Rancharrah to pay any sum due under the Lease and cure the breach within ten days.  (Lease (#30) Ex. 1 at 9).  Upon the occurrence of an Event of Default, the Lease allows GC Air to obtain liquidated damages, obtain specific performance, prohibit the use of the Aircraft and require the Aircraft be returned to GC Air, sell or lease the Aircraft to another party, along with other possible remedies.  (*Id.* at 9-10).  The Lease states that all the remedies are cumulative and may be exercised instead of or in addition to each other or any other remedy available at law, in equity, or under statute.  (*Id.* at 12).

Rancharrah defaulted on the Lease by failing to pay the full amount due on June 1, 2011.  (Letters (#3) Ex. 4; Opp'n to Mot. for Summ. J. (#40) at 4).  GC Air notified Defendants of the default status of the Lease and demanded the default be cured by July 30, 2011.  (*Id.*).  Defendants did not cure the default by the stated time and GC Air filed a verified complaint in this Court on September 7, 2011 against Rancharrah, the Trust, and John A. Harrah, which contains five causes of action.  (Compl. (#1)).  In the first cause of action, GC Air seeks injunctive relief, requesting that the Court enjoin Rancharrah from using the Aircraft, order Rancharrah to disclose the location of the Aircraft so that it may be reclaimed, and that Rancharrah's access to the Aircraft be restricted.  (*Id.* at 6-7).  In the second cause of action, GC Air seeks an order directing Rancharrah to specifically perform its obligations under the Lease and to return the Aircraft.  (*Id.* at 7-8).  GC Air seeks a writ of possession in its third cause of action, directing that the Aircraft be immediately returned.  (*Id.* at 8-9).  The fourth cause of action alleges GC Air breached the Lease and claims GC Air is entitled to contractual money damages due to this breach of contract.  (*Id.* at 9).  Finally, in the fifth cause of action, GC Air claims breach of guaranty and seeks the amount due under the Lease from the guarantors.  (*Id.* at 10).

On September 27, 2011, Defendants entered into a Voluntary Surrender Agreement, in which Defendants voluntarily returned the Aircraft to GC Air.  (Voluntary Surrender Agreement (#17)).  In the Voluntary Surrender Agreement, GC Air expressly reserved its right

1    to seek a monetary judgment against Defendants.  (*Id.* at 2-3).

2         GC Air filed a motion for summary judgment on November 3, 2011.  (Mot. for Summ.

3    J. (#29)).   The motion for summary judgment seeks to have the Court enter summary

4    judgment in favor of GC Air and declare that Defendants are liable for damages totaling

5    $2,357,708.33 as of October 2011 resulting from their failure to abide by the terms of the

6    Lease and Guarantees.  (Mot. for Summ. J. (#29) at 8).  Defendants filed an opposition to the

7    motion for summary judgment on December 5, 2011, contending that a genuine issue of

8    material fact exists and that GC Air's calculation of the damages is incorrect and amounts to

9    an unlawful penalty provision.  (Opp'n to Mot. for Summ. J. (#40) at 8-13).

10        A hearing was held on the motion for summary judgment on April 23, 2012.  At the

11   hearing, the Court was informed that the Aircraft was recently sold to a third party for an

12   undisclosed amount.

13                                    **LEGAL STANDARD**

14        The purpose of summary judgment is to dispose of factually unsupported claims and

15   defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A court must grant

16   summary judgment when "the movant shows that there is no genuine dispute as to any

17   material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

18   A fact is material if it may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477

19   U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence

20   for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

21        When presented with a motion for summary judgment, the court employs a burden-

22   shifting analysis.  When the moving party would bear the burden of proof at trial, it must

23   present evidence "which would entitle it to a directed verdict if the evidence went

24   uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

25   480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  In such

26   circumstances, "the moving party has the initial burden of establishing the absence of a

27   genuine issue of fact on each issue material to its case."  *Id.*  In contrast, when the nonmoving

28   party would bear the burden of proving the claim or defense, the moving party may satisfy its

1   burden in two ways: (1) by presenting evidence which negates an essential element of the

2   nonmoving party's case; or (2) by demonstrating that the nonmoving party has failed to make

3   a showing sufficient to establish an essential element to that party's case on which that party

4   would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving

5   party fails to satisfy its initial burden, the court must deny the motion for summary judgment

6   and need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398

7   U.S. 144, 159-60 (1970).

8        If the moving party meets its initial burden, the burden will then shift to the opposing

9   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*

10  *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To show a genuine issue of material fact,

11  the opposing party is not required to establish a material issue of fact conclusively in its favor.

12  Rather, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to

13  resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

14  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat. Bank of Ariz. v. Cities*

15  *Serv. Co.*, 391 U.S. 253, 289 (1968)). The nonmoving party cannot avoid summary judgment

16  by solely relying on conclusory allegations that are unsupported by factual data. *See Taylor*

17  *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The opposition must go beyond the allegations

18  and assertions of the pleadings and set forth specific fact by providing the court with

19  competent evidence that establishes a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*

20  *Corp.*, 477 U.S. at 324.

21       At the summary judgment stage, the court is not to weigh the evidence and determine

22  the truth, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477

23  U.S. at 249. The evidence of the nonmovant must be believed and all justifiable inferences

24  drawn in his favor. *Id.* at 255. If the evidence of the nonmoving party is simply colorable or

25  it is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

26                                  **DISCUSSION**

27       The terms of the Lease specifically provide that Connecticut law governs the

28  interpretation of the Lease and the rights and obligations of the parties thereunder. (Lease

4

1  (#30) Ex. 1 at 17).  Under Connecticut law, the elements of a claim for breach of contract are:
2  (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement
3  by the other party; and (4) damages.  *Seligson v. Brower*, 952 A.2d 1274, 1277 (Conn. App.
4  Ct. 2008).

5      Defendants admit to the existence of a contract, specifically the Lease and Guarantees.
6  (McElhinney Aff. (#40-1) Ex. 1 at 1; Lease (#40-1) Ex. 2; Guaranty (#30-2) Ex. 3; Individual
7  Guaranty (#30-2) Ex. 4).  GC Air has also shown it has substantially performed under the
8  Lease, and Defendants do not dispute this.  (Wilson Aff. (#30) at 6).  Defendants admit
9  Rancharrah did not make the required payments under the Lease beginning June 1, 2011 or
10  cure the default within ten days, which is specifically listed as an "Event of Default" in the
11  Lease.  (Opp'n to Mot. for Summ. J. (#40) at 4; Lease (#30) Ex. 2 at 9).  GC Air was also
12  damaged as it did not receive the payments it was entitled to under the Lease, allegedly
13  amounting to millions of dollars.  (Wilson Aff. (#30) at 5).  As GC Air has properly shown all
14  necessary elements to succeed on its claims for breach of contract and guarantees, it is
15  entitled to judgment as a matter of law.

16      Defendants argue summary judgment however should not be granted because a
17  genuine issue of material fact exists as to the parties intent regarding certain terms and
18  provisions of the Lease.  (Opp'n to Mot. for Summ. J. (#40) at 8).  However, "where there is
19  definitive contract language, the determination of what the parties intended by their contractual
20  commitments is a question of law," not a question of fact.  *Conn. Light & Power Co. v.
21  Lighthouse Landings, Inc.*, 900 A.2d 1242, 1253 (Conn. 2006).  Definitive contractual language
22  exists here in the Lease, and therefore the interpretation of the contract is a question of law
23  and not of fact.  Defendants consequently cannot rely on the parties intent as to the meaning
24  of the contract terms to establish a genuine issue of material fact to defeat summary judgment.
25  Because GC Air has shown that it is entitled to judgment as a matter of law and because
26  Defendants have failed to present any genuine issue of material fact, GC Air's motion for
27  summary judgment is hereby granted as to Defendants' liability.

28      GC Air also seeks damages in the amount of $2,357,708.33 for Defendants' breach of

the Lease and Guarantees.  (Mot. for Summ. J. (#30) at 10).  In support of this amount of damages, GC Air has only presented a table listing all the categories of charges and the resulting total owed by Defendants.  (*See* Schedule (#30) Ex. 5).  Defendants argue that the table does not clearly illustrate how the damages were calculated and request additional briefing or limited discovery to determine how GC Air came to the stated calculation of damages. (Opp'n to Mot. for Summ. J. (#40) at 9-10).  The table ultimately does nothing more than state the category of the charge—such as rents, sales tax, and late charges—and then lists the amount GC Air proposes is owed for that charge.  No support proving the veracity of these charges or that would even demonstrate how these totals were calculated has been provided by GC Air.  Because the table of proposed damages is vague, at best, GC Air has failed to satisfy its initial burden with regard to the requested damages.  Summary judgment is therefore denied on the issue of damages.

Because the issue of damages is still in dispute, additional briefing is necessary.  The Court grants GC Air until May 23, 2012 to file a second motion for summary judgment on the issue of damages.  The motion should clearly delineate the amount of damages GC Air has suffered as a result of the breach, specify how its calculation of damages was reached, and provide evidence supporting its calculation.  Defendants then have until June 7, 2012 to respond to the motion for summary judgment and challenge GC Air's calculation of damages. A hearing will be held on the second motion for summary judgment on June 11, 2012 at 9:00 a.m.[1]

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that GC Air's motion for summary judgment is granted in part and denied in part.  The Court GRANTS the motion as to Defendants'

---

[1] Because additional briefing is required on the issue of damages there is no need at this time to address Defendants' argument that granting the requested award for money damages would amount to a double recovery for GC Air and a penalty against Defendants. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

liability, finding that Defendants breached the Lease and Guarantees.  However, the Court DENIES the motion with respect to the request for damages.

IT IS FURTHER ORDERED that GC Air will file a second motion for summary judgment regarding damages by May 23, 2012 and Defendants will file a response to the motion for summary judgment by June 7, 2012.  A hearing will be held on the second motion for summary judgment on the issue of damages on June 11, 2012 at 9:00 a.m.

IT IS SO ORDERED.

Dated:  This 25th day of April, 2012.

_____
United States District Judge