UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GC AIR, LLC,    ) <br> ) <br> Plaintiff,    ) <br> ) <br> vs.    ) <br> ) <br> RANCHARRAH MANAGEMENT, LLC, et al.,    ) <br> ) <br> Defendants.    ) <br> ) | 3:11-cv-00647-RCJ-VPC <br><br> **ORDER** |

This case arises out of the lease of an aircraft. Pending before the Court are cross motions for summary judgment. For the reasons given herein, the Court grants Defendants' motion and denies Plaintiff's.

## I.    FACTS AND PROCEDURAL HISTORY

On or about December 30, 2005, Plaintiff GC Air, LLC, as lessor, and Defendant Rancharrah Management, LLC ("Rancharrah"), as lessee, executed an aircraft lease agreement (the "Lease"), under which GC Air agreed to purchase and then lease to Rancharrah an Israel Aircraft Industries Model 1125 Westwind Astra Aircraft (the "Aircraft"). (*See* Lease, ECF No. 56-1, Ex. 1). To induce GC Air to enter into the Lease, Defendant John A. Harrah—both in his capacity as trustee of Defendant The Harrah Family Trust (the "Trust") and in his individual capacity (collectively, "Harrah")—executed two guaranties (the "Guaranties"), in which both the Trust and Harrah guaranteed Rancharrah's performance under the Lease. (*See* Guaranty, ECF No.

56-1, Ex. 2; Individual Guaranty, ECF No. 56-1, Ex. 3). The Lease and Guaranties are governed by Connecticut law, which is the location of the principal office of General Electric Credit Corporation of Tennessee ("GECCT")—the entity ultimately in control of GC Air. (*See* Lease, Ex. 1 at 17; Compl. 1-2, ECF No. 1). Upon the occurrence of an event of default, the Lease allows GC Air to:

> demand that Lessee immediately pay as liquidated damages, for loss of a bargain and not as a penalty, an amount equal to the Stipulated Loss Value of the Aircraft, computed as of the Basic Term Rent Date prior to such demand together with all Rent and other amounts due and payable for all periods up to and including the Basic Term Rent Date following such demand.

(*Id.*, Ex. 1 at 10). The "stipulated loss value of the Aircraft" is a certain percentage of GC Air's capitalized cost of the Aircraft, which decreases each month during the lease term and incorporates both the value of the remaining unpaid lease payments and the anticipated value of the Aircraft on the date of default. (*See id.*, Ex. 1, ann. F). The Lease also permits GC Air to sell, lease, or otherwise dispose of the Aircraft upon default and to apply the proceeds of the disposition in the following order of preference: (1) to pay GC Air's expenses incurred in enforcing its rights under the Lease or in taking, removing, holding, repairing, selling, leasing, or otherwise disposing of the Aircraft; (2) to pay GC Air all sums due from Defendants under the Lease; (3) to reimburse Defendants any sums previously paid by Defendants in liquidated damages; and (4) all remaining surplus is retained by GC Air. (*See id.*, Ex. 1 at 10).

Rancharrah defaulted on the Lease by failing to pay the full amount due on June 1, 2011. (*See* Letters, ECF No. 56-1, at Ex. 4). GC Air notified Defendants of the default and demanded it be cured by July 30, 2011. (*See id.*). Defendants did not cure the default, and GC Air filed the Complaint in this Court on September 7, 2011 for breach of the Lease and the Guaranties.

On September 27, 2011, the parties entered into a voluntary surrender agreement ("VSA"), under which Defendants voluntarily returned the Aircraft to GC Air. (*See* VSA, ECF No. 17). In the VSA, GC Air expressly reserved its right to seek a monetary judgment against

Defendants. (*See id.* at 2–3).  The Aircraft was privately sold on April 9, 2012 for $925,000.00. (*See* Bill of Sale, ECF No. 56-1, Ex. 6).

GC Air filed a motion for summary judgment against Defendants on November 3, 2011, claiming damages totaling $2,357,708.33 as of October 2011.  The Court granted the motion as to liability but denied the motion with respect to damages because GC Air failed to sufficiently establish damages, and the Court ordered additional briefing on the issue. (*See* Order 6–7, ECF No. 51).  Defendants filed its present motion for summary judgment on the issue of damages on May 3, 2012, arguing that the liquidated damages clause amounted to an unenforceable penalty because it granted GC Air a windfall of more than $2 million above the value of its actual damages.  The liquidated damages calculation effectively forces Defendants to purchase the Aircraft upon default and thus forces them to bear the risk that the value of the Aircraft has decreased at a greater rate than anticipated.  Defendants also argue that GC Air is unlawfully attempting to collect both liquidated and actual damages rather than electing only one of these remedies.  GC Air filed its present motion for summary judgment on the issue of damages on May 23, 2012.  GC Air lists in detail its calculated damages in the motion and the exhibits provided, which include liquidated damages and expenses incurred in inspecting, maintaining, and selling the Aircraft.  In total, GC Air seeks $2,306,152.46 in damages along with interest accruing at a rate of $682.77 per diem after June 11, 2012, plus attorney's fees and costs.

The Court held a hearing on the motions for summary judgment on July 2, 2012.  At the hearing, the Court informed the parties that it believed that the liquidated damages clause in the Lease is an unenforceable penalty provision because it shifts the risk that the Aircraft has decreased in value to the Defendants upon default.  GC Air requested that the Court wait to issue an order until the parties had further discussed settlement, and the Court granted this request, giving the parties until September 15, 2012 to reach a settlement before the Court would enter an order without further notice.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party

1 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### B. Liquidated Damages Versus Penalties

> [A] contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of the contract is enforceable if it satisfies certain conditions . . . . The conditions which will justify an agreement for liquidated damages are: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract.

*Norwalk Door Closer Co. v. Eagle Lock & Screw Co.*, 220 A.2d 263, 266–67 (Conn. 1966). (citations and internal quotation marks omitted).

///

///

///

## III.   ANALYSIS

The liquidated damages clause in this case operated as a penalty. First, the damages suffered as a result of breach would not be difficult to anticipate or prove in this case. In a simple lease, the damages equal the amount of rent in arrears, plus consequential and incidental damages, minus any amount by which the lessor has mitigated, or reasonably could have mitigated, his damages. This is not a case of a complex manufacturing or business relationship where the nonperformance of one party is likely to cause a chain of difficult-to-predict effects upon the other party's ability to continue to operate profitably, and where damages are difficult to anticipate or prove. Second, there was an explicit intent to liquidate damages in advance. Third, the amount stipulated was patently unreasonable, requiring the lessee to purchase the aircraft as a penalty for breaching a lease, and without receiving credit for past lease payments against the price. In essence, the liquidated damages clause here turns the agreement into a lease with a requirement to buy upon breach, and without credit for past lease payments. The unreasonableness of such a damages clause, and that it operates as a penalty, is too plain to be denied. The punitive nature of the clause is readily apparent when one considers the example of automobile leases. It would clearly be unreasonable to require a consumer to purchase a vehicle as "liquidated damages" for defaulting on a vehicle loan, and based upon a price formula that refuses to credit past lease payments against the value of the vehicle. The present clause is no less unreasonable.

To own property is to own both the opportunity of profiting from its increased value and the risk of suffering loss from its reduced value. If Plaintiff wished to transfer this benefit and risk to Defendants, it must have done so by transferring title, not by a lease, which is merely payment for the right to use property, but not to dispose of it.[1] Plaintiff's attempt to transfer the

---

[1] Plaintiff could have transferred title to the Aircraft in exchange for a promissory note and security agreement, which presumably would have been actionable upon default under

risk of a decrease in value of the Aircraft to the lessee, while retaining for itself the benefit of the opportunity to profit from any increased value and to dispose of ownership of the Aircraft, via a "liquidated damages" clause indicates that the clause is in fact a penalty.  The Court therefore grants summary judgment to Defendants that the liquidated damages clause is an unenforceable penalty.

The Court has ruled in favor of Plaintiff on the matter of liability on the Lease and Guaranties, but Plaintiff may only receive its actual damages.  The Court rules that those damages equal the value of the unpaid lease payments to the date of resale, plus additional repair costs caused by the breach, minus mitigation due to resale, plus costs and fees if permitted by the Lease.  The resale price has not yet been disclosed.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 52) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 55) is DENIED.

IT IS FURTHER ORDERED that a hearing is set on TUESDAY, DECEMBER 18, 2012, 9:00 A.M., in Reno Courtroom 6, before Chief Judge Robert C. Jones, at which the damages amount can be made certain according to the calculation *supra*.  If there is no dispute over the amounts, as opposed to the measure of damages, a jury trial will be unnecessary.

IT IS SO ORDERED.

Dated this 3rd day of December, 2012.

_____
ROBERT C. JONES
United States District Judge

---

Connecticut law.